### Edward Day v. George Gregory.

1. WITNESSES—*Credibility of.*—The judgment of a jury who see and hear all the witnesses, as to their comparative credibility, the preponderance of the evidence and the merits of the claims on each side, should be accepted as final, unless there is material error in the ruling of the court.

2. IMPEACHMENT—*Of Accounts.*—In an action founded upon an alleged settlement of an account, it is competent to impeach the account, and any evidence, as for instance the fact that the plaintiff said it would be easy to beat the defendant because he kept no account, which in connection with other circumstances in proof may tend to do so, is competent.

3. INSTRUCTIONS—*Abstract Propositions of Law.*—It is error to give as an instruction an abstract proposition of law, but when it is based upon an immaterial question, it is not reversible error.

Assumpsit, on an account stated. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1894. Affirmed. Opinion filed June 3, 1895.

PATTON, HAMILTON & PATTON, attorneys for appellant.

CONKLING & GROUT, attorneys for appellee.

Day v. Gregory.          .

Mr. Justice Pleasants delivered the opinion of the Court.

The parties respectively occupied houses a quarter of a mile apart on the same farm, which they rented and worked together, halving the expenses and proceeds. Appellant is a nephew of appellee. They worked together on this understanding two or three years—when they began or when they quit was not shown. In using, furnishing, paying and receiving, they became indebted to each other on divers items. Appellant claimed to have kept an account, but appellee never did and appellant knew it. After several talks about a settlement, appellee and his wife, on November 17, 1892, went to appellant's house to look with him over their matters and find out how they stood. Appellant's wife, sister and brother were present. He claimed that they then and there settled and agreed upon a balance against appellee of $196.94, which he promised to pay; but as it was not paid, this action was brought in assumpsit on the common counts for that amount and another item, making together $208.46. The general issue was filed, and the jury having found for the defendant and their finding being sustained over a motion to set it aside, judgment was rendered against the plaintiff for costs, and he brings the record here for review.

Appellant claims a clear and large preponderance of evidence in his favor, but admits there was some conflict. As presented in the abstract it appears to us to be subject to some criticism in itself, which may have materially aided the contradiction by that of the defendant. The book introduced as showing the statement of the account on which the balance due was said to have been agreed on, was admitted to have been made up in good part from other memoranda after different intervals of time. It contained about eighty debit items and only about twenty of credits, which was perhaps a greater disparity in number than would naturally be expected under the circumstances, and between parties equally interested in the business out of which in the most part they grew, and the balance was as propor-

tionately large on the side of the debits. The one who made it understood that the other was not keeping any, to check it. The order, or disorder, in time, of these entries is illustrated by the first six which are as follows:

" 1891.

February 17, 2 hogs at 3.30, 22 pounds apiece...... $14.72
March 19, potatoes.............................. 11.75
December 27, loaned............................. .50
January 27, difference on H. Warner's 2 hogs...... 2.65
April 26, due beefsteak.......................... .25
April 7, ½ paid Arne Mavis...................... .30"

Appellant offered explanations, particular and general, of these irregularities running throughout the statement, which are claimed by counsel to have been satisfactory, but they would be apt to shake the confidence of a jury.

Again, appellant, his brother and his sister, alike testified that a balance was agreed on, amounting to nearly $200, and that appellee promised to pay it. But appellant stated that the promise was to pay it " when he sold some horses;" his brother, " when he sold his steers;" and his sister, " when he could. He mentioned no particular amount." Such was the evidence upon which appellant mainly relied.

Appellee fully admitted that they met to settle and that the parties named were present; but testified that two or more books or statements were produced (and appellant's sister testified that there were two); that his wife looked over them (while appellant was absent for half an hour) and found that he had been charged with some items several times, though they don't appear on the book introduced, and that he told appellant he wouldn't settle by those books or his figuring. He strongly asserted that he did not settle or agree on any balance or promise to pay anything; that he had paid certain items charged, made other payments to and for appellant and let him have property not credited, and owed him nothing, but that appellant owed him. His testimony also, as it appears in the abstract, is subject to criticism. He couldn't give amounts or dates or places or circumstances of a number of payments claimed, which,

however, is not very surprising, as he kept no record, and was contradicted on some points not here mentioned, as was appellant.

Without going further into particulars it was evidently a case in which the unanimous judgment of twelve impartial men who saw and heard all the witnesses, as to their comparative credibility, the preponderance of the evidence and the merits of the claims on each side, should be accepted as final, unless there was material error in some ruling of the court.

It is argued that one item of evidence was improperly admitted and was prejudicial to appellant, viz., that he said to three or four of the witnesses, on different occasions, that it would be easy to beat appellee in a law suit because he kept no account; which must have been understood by the jury as referring to this suit, then begun or in prospect, because no other claim or account against him was mentioned, though his own was not otherwise indicated, nor did he otherwise intimate an intention to take advantage of the fact stated.

His claim was founded almost wholly on an alleged settlement by the account he made out. It was therefore competent to impeach the reliability of that account. The testimony complained of, in connection with other circumstances in proof, may have tended to do so, and the abstract fails to show that any objection to its admission was made when it was offered. If it had no such tendency, it could do no harm. But we are inclined to think that his knowledge on that subject, as admitted by him, was a fact which the jury might properly know and weigh, as tending to show opportunity to take advantage, and defendant's confidence in his integrity as a reason for his own neglect to keep an account.

The only other point urged against the judgment is that in the instructions given at the instance of defendant, the court assumed the existence of a partnership between the parties, and upon that assumption told them the law was that neither partner could maintain an action at law against the other for any indebtedness arising out of that

relation, until an accounting was had between them of all
such matters, and a balance agreed on. Three instructions
to that effect, in abstract form, were given. The first of
these commences thus: "That an action at law will not lie
by one partner against another," etc. Another, "That one
partner can not maintain an action at law against the other
in relation to their partnership business, until," etc. A third
was similar, and a fourth was that, "Though the jury may
believe from the evidence that an accounting was had be-
tween plaintiff and defendant of partnership matters and a
balance was determined, yet if they further believe from
the evidence that plaintiff, by fraud or concealment, pre-
vented a fair settlement of such partnership matters, or
fraudulently and without defendant's knowledge, charged de-
fendant with improper sums, then the plaintiff can not main-
tain an action as to that part of his account arising from
partnership matters."

Though these instructions state the law correctly, they
should not have been given in that form if there had been
any dispute, upon the evidence, as to the existence of the
partnership relation, but the question should have been left
to the jury to determine it from such evidence. We can not
doubt that the court understood the fact of partnership as
conceded. We think such an understanding was fully war-
ranted. Both of the parties and all the witnesses on each
side agreed in designating their relation as that of a partner-
ship, and while they may not have known what is technically
required to constitute it, we find nothing in the facts, as
stated, to show it was not of that character. And the first
instruction for plaintiff, as we think, also substantially con-
ceded it. It declared upon the hypothesis of a settlement,
balance found and promise to pay, that the plaintiff was
entitled to recover the amount with interest, "and it makes
no difference whether the items embraced in such settlement
were partnership or individual matters, or both."

Moreover, as already observed, the book introduced was
not evidence in itself, but only as the statement by which
the settlement was alleged to have been made; hence, had

there been no partnership, the appellant would not have been entitled to recover, unless a settlement by it had been made and a balance in his favor found, except for such items as were independently proved—which were few, if any, and as we apprehend, without stopping to ascertain, those so claimed do not exceed the credits given, of which it was evidence as against him.   The question of partnership was, therefore, not very material.

We see no sufficient reason for its reversal, and the judgment will be affirmed.